UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHANIE C. (McDONALD) GILPIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:11-cv-00204-DML-SEB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Judicial Review

Plaintiff Stephanie C. (McDonald) Gilpin applied for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) in December 2006,[1] alleging that she has been disabled since August 5, 2003, because of numerous physical and mental impairments. For purposes of DIB, Ms. Gilpin's last insured status date is September 30, 2008.

Ms. Gilpin's disability claims were denied initially and on reconsideration. After a hearing held October 1, 2009, an administrative law judge acting for the Commissioner of the Social Security Administration found that Ms. Gilpin was not disabled because she is capable of performing unskilled light work as an office helper, jobs that exist in significant numbers in Indiana. The National Appeals Council denied review of the ALJ's decision, rendering the

---

[1]     Two programs of disability benefits are available under the Social Security Act: Disability Insurance Benefits under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.,* and Supplemental Security Income disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.*

ALJ's decision for the Commissioner final.  Ms. Gilpin filed this civil action, under 42 U.S.C. § 405(g), for judicial review of the Commissioner's decision.[2]

Ms. Gilpin asserts that the ALJ erred at step five because (a) in determining Ms. Gilpin's residual functional capacity, the ALJ failed to evaluate properly the opinion of a non-examining state physician that Ms. Gilpin only had the capacity to stand or walk for two hours in an 8-hour work day and (b) the hypothetical posed by the ALJ to the vocational expert did not include limitations on concentration, persistence, or pace, even though the ALJ determined Ms. Gilpin suffers moderately in these areas.

<u>**Standard for Proving Disability**</u>

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).[3]  Ms. Gilpin is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

---

[2]     The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

[3]     The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, materially identical provisions appear in Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.,* and at 20 C.F.R. § 416.901 e*t seq.*

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is,
then she is not disabled.  Step two asks whether the claimant's impairments, singly or in
combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that
"significantly limits [a claimant's] physical or mental ability to do basic work activities."  20
C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either
singly or in combination, meet or equal the criteria of any of the conditions in the Listing of
Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments are
medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a
claimant meets all of the criteria for a listed impairment or presents medical findings equal in
severity to all the criteria for the most similar listed impairment, then the claimant is
presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir.
2002).

   If the claimant's impairments do not satisfy a listing, then her residual functional
capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to
do work on a regular and continuing basis despite her impairment-related physical and mental
limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her
past relevant work, then she is not disabled.  The fifth step asks whether there is work in the
relevant economy that the claimant can perform, based on her age, work experience, and
education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.
*Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the
Commissioner has the burden at step five to show that work exists in significant numbers in the
national economy that the claimant can perform, given her age, education, work experience, and

functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## <u>Standard for Review of the ALJ's Decision</u>

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).  This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted).  *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict.  *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions.  *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, she must have first built an accurate, logical bridge between the evidence and her conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in her decision, but she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### The ALJ's Findings

Ms. Gilpin was born on July 31, 1973, was 30 years old at the time of the alleged onset of disability in 2003, and was 36 years old at the time of the ALJ's decision. At step one, the ALJ found that Ms. Gilpin had not engaged in substantial gainful activity since the alleged onset of disability. (R. 18). The ALJ found that Ms. Gilpin suffers from several severe impairments: degenerative joint disease in the knee, degenerative disc disease, and depression. (*Id*). At step three, the ALJ determined that Ms. Gilpin's impairments did not meet or medically equal a listing. She evaluated Ms. Gilpin's physical impairments against listing 1.00 for the musculoskeletal system and her mental impairments against listings 12.04 (affective disorders) and 12.06 (anxiety related disorders). With regard to her mental impairments—both in analyzing whether Ms. Gilpin met the listings and in evaluating restrictions on her functional capacity—the ALJ found that Ms. Gilpin is only mildly restricted in her activities of daily living, has mild difficulties in her social functioning, and has moderate difficulties in maintaining concentration, persistence, or pace. (R. 19). A state medical consultant had opined that Ms. Gilpin's difficulties in maintaining concentration, persistence, or pace were only mild, but the ALJ

reached a different conclusion—that the difficulties were moderate—because of Ms. Gilpin's depression.  (*Id*).

The ALJ next determined Ms. Gilpin's residual functional capacity, and found that she is capable of working at the light level of exertion as defined in 20 C.F.R. § 404.1567(b) and its counterpart for SSI claims, 20 C.F.R. § 416.967(b), except that Ms. Gilpin must be permitted to sit or stand at will.  As to Ms. Gilpin's mental functional limitations, the ALJ determined that Ms. Gilpin can perform "unskilled work that does not require contact with the public."  (R. 20). She defined unskilled work by citing to the definition under Social Security Regulation 85-15:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

(*Id.*).

At step four, the ALJ found that Ms. Gilpin is not capable of performing her past relevant work as a waitress because that job requires constant contact with the public.  (R. 24).  At step five, the ALJ relied on the testimony of a vocational expert who identified the job of office helper (DOT #239.567-010), which is performed at the light level of exertion, as available in significant numbers in Indiana and appropriate given Ms. Gilpin's RFC.  (R. 25).  Accordingly, the ALJ decided that Ms. Gilpin is not disabled.  (*Id.*).

## Analysis

### I. The ALJ gave "significant weight" to Dr. Whitley's RFC assessment, but his assessment is at odds with the ALJ's step five conclusion.

Dr. B. Whitley, a state non-examining physician, prepared a physical residual functional capacity assessment on April 27, 2007 (R. 383-390), based on the medical evidence in the record, including the results of a consultative physical examination performed by Dr. Daniela

Djodjeva on March 10, 2007 (R. 363-65).  Dr. Whitley's report recites specific facts upon which

his conclusions are based:  reduced range of motion in cervical spine; knee and hip flexion with

pain (severe in hips); chronic back pain; left upper and lower extremity paresthesias; slightly

limping gait on the left side, supported with a cane; ability to walk without a cane, but noting the

cane was prescribed by a doctor at the pain management center treating Ms. Gilpin.  (R. 384).

The ALJ's decision states that she gave "significant weight" to Dr. Whitley's opinion, which the

ALJ described as one that "determined that the claimant is capable of performing work at the

light exertional level."  (R. 23).  But Dr. Whitley's opinion does not say as much and never uses

the term "light."

        Dr. Whitley's assessment, using a form prescribed by the SSA in a check-the-box

format, states that Ms. Gilpin has the following exertional limitations:  she can stand and/or walk

(with normal breaks) for a total of "at least 2 hours in an 8-hour workday"; she can sit (with

normal breaks) for a total of "about 6 hours in an 8-hour workday"; she can occasionally lift

and/or carry 20 pounds; she can frequently lift and/or carry 10 pounds; and she can push and/or

pull "the same as" for lift and/or carry.  (R. 384).

        Ms. Gilpin contends that the ALJ's determination that she is capable of light work is

materially at odds with Dr. Whitley's assessment of her functional capacity (and inconsistent

with the office helper position that the ALJ found she could perform) because light work requires

the ability to stand or walk for more than the "at least 2 hours" duration assigned by Dr. Whitley.

SSA's regulations distinguish between light and sedentary work primarily based on the amount

of standing and walking versus sitting required by the work.  Under 20 C.F.R. § 404.1567, and

the corresponding SSI regulation at 20 C.F.R. § 416.967, a sedentary job is "defined as one

which involves sitting, [although] a certain amount of walking and standing is often necessary in

carrying out job duties."  Section 404.1567(a); section 416.967(a).   A job is in the category of light work "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Section 404.1567(b); section 416.967(b).  *See also* SSR 83-10 ("a job is in [the light work] category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs.").

The Commissioner agrees that light work "typically involves standing and walking for up to six hours total in an eight-hour workday" (Dkt. 22 at p. 7), but contends that Dr. Whitley's opinion is "essentially consistent" with the ALJ's RFC for light work because Dr. Whitley said that Ms. Gilpin can stand and/or walk "at least" two hours in an eight-hour work day.  But what did Dr. Whitley mean when he checked the box that Ms. Gilpin can stand or walk "at least" two hours?  Does that fairly include up to six hours?  Dr. Whitley could have instead checked boxes for "less than 2 hours" or "about 6 hours."  The form he completed is an SSA form and, as a state agency medical consultant, he is an expert in Social Security disability evaluation.  *See* 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation").

SSA's Program Operations Manual System, an internal manual of information used by Social Security employees to process disability claims (*see* the POMS home page at www.socialsecurity.gov), contains guidelines for completing the Physical Residual Capacity Assessment Form that Dr. Whitley filled out.[4]  According to POMS Section DI 24510.050C, the hours (or weight) limitations on the form represent the "maximum amount the individual can clearly do on a sustained basis," and when the claimant can do an amount greater than the

---

[4]      Although the POMS manual is not "legally binding" on the SSA and does not create legal rights, *Parker ex rel. Lamon v. Sullivan,* 891 F.2d 185, 190 (7th Cir. 1989), it is reasonable to infer that Dr. Whitley's expression of his assessment on the SSA form was consistent with SSA internal guidelines with which he is presumed to have expert knowledge.

amount checked, then the physician must "describe and explain the amount." Dr. Whitley did

not find that Ms. Gilpin can stand or walk for any more than the "at least" two hours that he

assigned as her functional capacity.

The category of light work consistent with Dr. Whitley's assessment is light work that

"involves sitting most of the time with some pushing and pulling of arm or leg controls." 20

C.F.R. § 404.1567(b) (job can be in light category when it does not require "a good deal of

walking or standing" but involves sitting with pushing and pulling arm and leg controls). But the

office helper job identified by the vocational expert and which the ALJ found existed in

sufficient number consistent with Ms. Gilpin's "light work" RFC is not one of these jobs. That

job, identified by the vocational expert using its DOT (Dictionary of Occupational Titles)

number, DOT #239.567.010 (R. 25), is not performed by pushing and pulling arm and leg

controls. *See* www.occupationalinfo.org/23/239567010 (last visited March 13, 2012)

(describing the job of office helper, generally, as clerical duties in a commercial or industrial

business office involving sorting and distributing mail, delivering messages, collecting and

distributing paperwork, tabulating and filing records).

Thus, Dr. Whitley's assessment is materially at odds with typical light work, requiring

the ability to stand or walk for six hours, and at odds with the specific work the ALJ found Ms.

Gilpin capable of performing.[5]

---

[5]      The ALJ's statement that Ms. Gilpin also must be permitted a sit-stand option, meaning she can alternate between sitting and standing, does not expand the amount of time beyond the two-hour period in a day that she can tolerate standing and walking. Social Security Regulation 96-9p describes the sit-stand option as one designed to permit a person who performs a sedentary job to perform his job in a standing position or by taking periodic breaks from the work by standing: "An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded."

The Commissioner attempts to maneuver around the inconsistency between Dr. Whitley's medical opinion and the ALJ's RFC by arguing that Dr. Whitley's opinion was not entitled to controlling weight because he was not Ms. Gilpin's treating physician.  Though the court agrees that only opinions of treating physicians may ever be given "controlling" weight, the Commissioner ignores how the ALJ actually treated Dr. Whitley's opinion.  In her own words, the ALJ gave it "significant weight," and she relied on it as fully supporting her RFC.  (R. 23-24).

An accurate, logical bridge between the evidence relied on by the ALJ and her conclusion is missing.  *See Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000) (when ALJ denies benefits, she must first "build an accurate and logical bridge from the evidence to the conclusion"). Remand is necessary.

## II.     The RFC does not necessarily capture limitations resulting from Ms. Gilpin's mental impairments.

Ms. Gilpin also assigns as error the ALJ's failure to include in the RFC limitations stemming from the "moderate" difficulties with concentration, persistence, or pace the ALJ found she had.  (R. 19:  "With regard to concentration, persistence, or pace, the claimant has moderate difficulties.")  The Commissioner contends that the ALJ's limitation to unskilled work with no public contact sufficiently accommodated Ms. Gilpin's moderate difficulties but, as Ms. Gilpin points out, it is impossible to tell whether the hypothetical questions posed by the ALJ to the vocational expert accounted for the moderate difficulties.   An ALJ's hypothetical question to a vocational expert should include all limitations found by the ALJ, including ones relating to concentration, persistence, or pace, and the term "unskilled" work does not necessarily exclude from the vocational expert's consideration jobs that a person with "moderate" difficulties in these areas cannot perform.  *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619-20 (7th Cir. 2010).

For example, where a claimant's moderate difficulties in concentration, persistence, or pace stem from anxiety or other stress, a hypothetical that references low-stress work may sufficiently account for the mental limitation.  *Id.* at 619.  Here, the record does not make manifest how "unskilled" work or work without contact with the public was meant to capture Ms. Gilpin's moderate difficulties, which the ALJ said stemmed from Ms. Gilpin's depression.  *See id.* at 620 (noting cases in which reference to unskilled work insufficiently accounts for a claimant's moderate limitations on concentration, persistence, or pace).

On remand, any hypothetical questions posed by the ALJ to a vocational expert must include Ms. Gilpin's "moderate" difficulties in concentration, persistence, or pace to assure that any jobs identified by the expert are ones Ms. Gilpin can do.

## <u>Conclusion</u>

The ALJ erred at step five.  The RFC she assigned to Ms. Gilpin is at odds with the medical opinion on which the ALJ purported to give significant weight, the job she found Ms. Gilpin can perform also is inconsistent with the RFC, and it is not clear how Ms. Gilpin's moderate difficulties in concentration, persistence, or pace were addressed in the RFC.

The Commissioner's decision is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ORDERED.

Date:  03/15/2012

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Joseph W. Shull
jshull@joeshull.com